# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ERIK MCMILLAN,                          :
                                        :
                    Petitioner,         :        Civil No. 11-1586 (KM)
                                        :
        v.                              :        **OPINION**
                                        :
GREG BARTKOWSKI, et al.,                :
                                        :
                    Respondents.        :

**APPEARANCES:**

**ERIK MCMILLAN**, Petitioner *pro se*
# 366709B
New Jersey State Prison
P.O. Box 861
Trenton, New Jersey 08625

**SARA BETH LIEBMAN**, Counsel for Respondents
Union County Prosecutor's Office
32 Rahway Avenue
Elizabeth, New Jersey 07202

**MCNULTY**, District Judge

Petitioner Erik McMillan ("Petitioner"), a prisoner currently confined at New Jersey State

Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254. The respondents are Michelle Ricci and the Attorney General of New Jersey.

For the reasons stated herein, the petition will be denied.

## I. BACKGROUND

This Court, affording the state court's factual determinations the appropriate deference, *see*

28 U.S.C. § 2254(e)(1)[1], will simply reproduce the recitation of facts as set forth by Superior Court

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of

of New Jersey, Appellate Division on direct appeal:

> The indictments against defendant McMillan stemmed from a robbery at an Amoco gas station in Hillside on February 5, 1998. The State's account of the robbery asserted that McMillan drove to the gas station at around 12:30 a.m. in a white Monte Carlo. At the time, Turan Akcasoy was working at the station. Akcasoy went to serve McMillan, who stood up and pointed a gun at him. McMillan took Akcasoy into the gas station attendant's booth and went through his pockets for money. Meanwhile, McMillan's cohort, Pagan, went into the booth to find a safe. He found the safe in the booth bathroom, but could not open it. McMillan took Akcasoy into the bathroom to open the safe, but he did not know the combination. McMillan and Pagan took the money Akcasoy had on his person, about $50, and left in the Monte Carlo.
>
> Akcasoy quickly called 911 and said he had been robbed. He provided a license plate number for the white Monte Carlo. Within two minutes, Hillside police spotted the suspect's car on Route 22. Within two minutes of spotting the car, Hillside police officer DiLeo was in pursuit. The chase proceeded for one and one-half miles through Newark. When the suspect's car stopped, both occupants fled the car and ran down the street. Officer DiLeo and fellow officer McClurkin pursued on foot. McMillan and Pagan then split; DiLeo followed McMillan as McClurkin followed Pagan. DiLeo caught McMillan and they struggled.
>
> When DiLeo arrested McMillan, he said his name was "Mike Williams." DiLeo recovered cash from McMillan's right front pocket and a fellow officer recovered cash from McMillan's dark blue jacket. Defendant had 56 one-dollar bills, 18 five-dollar bills, four ten-dollar bills and four twenty-dollar bills. The State argued that the amount of small bills suggested McMillan stole the money from the gas station. Pagan had a similar collection of cash on him. Retracing the path of the foot chase, the police also found a silver-colored handgun. The police also found a carton of Newport 100s cigarettes on the floor of the Monte Carlo.

*State of New Jersey v. McMillan*, A-1528-01T1 (N.J. Super. Ct. App. Div. June 28, 2004).

In 1998, the Union County Grand Jury returned Indictment No. 98-06-008651 against

Petitioner. (*Id.*) This indictment charged Petitioner with: (1) first-degree robbery, N.J.S.A.

2C:15-1 (Count One); (2) third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)

---

habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

(Count Two); (3) second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (Count Three); (4) second-degree eluding an officer, N.J.S.A. 2C:29-2(b) (Count Four); (5) third-degree receiving stolen property, N.J.S.A. 2C:20-7 (Count Five); (6) third-degree burglary, N.J.S.A. 2C:18-2 (Count Six); (7) third-degree theft, N.J.S.A. 2C:20-3 (Count Seven); (8) third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(5) (Count Eight); and (9) fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a) (Count Nine). (*Id.*) On June 19, 1998 the Grand Jury returned Indictment No. 98-06-008671, which contained a single count for a second-degree Graves Act violation, N.J.S.A. 2C:39-7. (*Id.*)

At pretrial hearings on January 2, 2001 Count Four was dismissed (second degree eluding an officer, N.J.S.A. 2C:29-2(b)). (*Id.*) On January 4, 2001, Petitioner's first trial began. (*Id.*) Petitioner and his co-defendant, Jorge Pagan, were tried jointly. (*Id.*) On January 9, 2001, a mistrial was declared because a State witness, who had been instructed not to refer to a previous robbery in her testimony, nevertheless did so. (*Id.*) The motion for mistrial was made by Pagan's counsel, and Petitioner's counsel joined in the motion. (*Id.*) A motion to bar a retrial on double jeopardy grounds was denied. (*Id.*) Petitioner made an interlocutory application to the Appellate Division, which was unsuccessful. (*Id.*)

The second trial began on January 11, 2001. (*Id.*) Petitioner was again tried with Pagan. (*Id.*) During the trial, the same witness, who spoke only Spanish, used an expression that might imply to a Spanish-speaker a prior robbery, but the interpreter did not express that word in English to the jury. (*Id.*) The judge conducted a *voir dire* of the Spanish-speaking members of the jury to determine if they realized there had been a prior robbery. (*Id.*) They recalled nothing about a prior robbery and the trial continued. (*Id.*) On January 30, 2001 the judge declared a mistrial because the jury was "hung." (*Id.*)

3

On April 25, 2001 the third trial began. (*Id.*) This time, Petitioner's trial was severed and he was not tried with Pagan. (*Id.*) Petitioner was found guilty on all counts. (*Id.*) At sentencing, the judge denied Petitioner's motion for a new trial and after merger, the court sentenced him, as a persistent offender, to an extended term of fifty years with twenty-five years of parole ineligibility on the first-degree robbery count, with lesser concurrent terms on the other non-merged counts. (*Id.*) The Appellate Division affirmed the conviction and sentence on direct appeal and the New Jersey Supreme Court denied certification. *State v. McMillan*, 868 A.2d 1031 (N.J. 2005).

Thereafter, Petitioner filed a petition for post-conviction relief ("PCR") in state court. The state court denied PCR relief and the Appellate Division affirmed. *State of New Jersey v. McMillan*, A-4719-06T4 (N.J. Super. Ct. App. Div. Jan. 5, 2010). The New Jersey Supreme Court denied certification. *State v. McMillan*, 991 A.2d 232 (N.J. 2010). On March 18, 2011, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Pet., ECF No. 1.) On June 22, 2011, this Court entered an order advising Petitioner of his rights pursuant to *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000) and giving him forty-five days to advise the Court as to how he would like to proceed. (*Mason* Notice, ECF No. 2.) Petitioner responded that he would like his petition to be ruled upon as filed. (*Mason* Response, ECF No. 3.) On September 6, 2011, the Court ordered Respondents to file an answer to the petition. (Order to Answer, ECF No. 4.) On October 7, 2011, Petitioner filed a "Notice of Motion for a Stay and Abeyance" to allow Petitioner to return to state court to "exhaust a motion for a new trial based on newly discovered evidence, i.e. an affidavit which supports a claims [sic] of prosecutorial misconduct." (Pet'r's Mot. Stay, ECF No. 7.) On October 18, 2011, Respondents filed their Answer to the Petition. (Resp't's Answer, ECF No. 9-11.) On March 20, 2012, Judge Linares, to whom this

case was then assigned, entered an opinion and order denying Petitioner's request for a stay and abeyance to allow Petitioner to return to state court to exhaust his "new trial" claim. (ECF Nos. 19-20.) This case was reassigned from Judge Linares to me on August 2, 2012. (ECF No. 22)

Petitioner has filed many letters and applications requesting that the Court reconsider the decision to deny his request for a stay and abeyance. (ECF Nos. 21-29.) *See* Section II.B.8, *infra.* Petitioner has also filed a motion for an evidentiary hearing. (ECF No. 30-31, 36.)

## II. DISCUSSION

### A. Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> ...
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding....

28 U.S.C. § 2254.

"As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v.*

*Pinholster*, 131 S.Ct. 1388, 1398 (2011). Section 2254(a) permits a court to entertain only claims

alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the

United States." *Id.* A federal court's authority to grant habeas relief is further limited when a

state court has adjudicated petitioner's federal claim on the merits.[3] *See* 28 U.S.C. § 2254(d). If

a claim has been adjudicated on the merits in state court proceedings, this Court "has no authority

to issue the writ of habeas corpus unless the [state court's] decision 'was contrary to, or involved an

unreasonable application of, clearly established Federal Law, as determined by the Supreme Court

of the United States,' or 'was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding.'" *Parker v. Matthews*, 132 S.Ct. 2148, 2151

(2012) (quoting 28 U.S.C. § 2254(d)). However, when "the state court has not reached the merits

of a claim thereafter presented to a federal habeas court, the deferential standards provided by

AEDPA ... do not apply." *Lewis*, 581 F.3d at 100 (quoting *Appel v. Horn*, 250 F.3d 203, 210 (3d

Cir. 2001)).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly

established by the Supreme Court. *See Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004).

Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's]

decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362,

---

[3] "[A] claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground." *Lewis v. Horn*, 581 F.3d 92, 100 (3d Cir. 2009) (quoting *Thomas v. Horn*, 570 F.3d 105, 117 (3d Cir. 2009)). "Section 2254(d) applies even where there has been a summary denial." *Cullen*, 131 S.Ct. at 1402. "In these circumstances, [petitioner] can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the [state court's] decision." *Id.* (quoting *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)). *See also Johnson v. Williams*, 133 S.Ct. 1088, 185 L.Ed.2d 105 (2013) ("[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted").

412 (2000). A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA." *Parker*, 132 S.Ct. at 2155 (quoting 28 U.S.C. § 2254(d)(1)).

A decision is "contrary to" a Supreme Court holding under 28 U.S.C. § 2254(d)(1) if the state court applies a rule that "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different result.]" *Williams*, 529 U.S. at 405–06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. However, under § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (quoting *Williams* at 410). As the Supreme Court explained,

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.... Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington*, 131 S.Ct. at 786 (citations and internal quotation marks omitted).

"This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen*, 131 S.Ct. at 1398 (citations and internal quotation marks omitted). The petitioner carries the burden

7

of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *Id.*

## B. Analysis

### 1. Double Jeopardy (Grounds One, Two and Twelve)

In Ground One of his petition, Petitioner argues that he was "deprived of his due process right to fundamental fairness when the State was not barred from trying Petitioner a fourth time when (a) the indictment was not dismissed after the mistrial of the first trial; (b) the prosecutor did not exercise sufficient diligence to control his witness to prohibit testimony in conflict with the court's order sanitizing the prospective testimony; and (c) there were readily available alternatives to a mistrial." In Ground Two, Petitioner alleges that he was "deprived of his due process right to fundamental fairness when the indictment was not dismissed after the trial court warned that it would be dismissed if the error reoccurred during the retrial, and the error did in fact recur when witness used the term robber during Petitioner's second trial." In Ground Twelve, Petitioner alleges that "the state court's ruling that Petitioner was not placed in double jeopardy was contrary to clearly established federal law."

Petitioner raised these issues on direct appeal. The Appellate Division stated the following:

> Defendant McMillan first argues that principles of double jeopardy and fundamental fairness bar his prosecution in the third trial which ultimately resulted in his conviction. We find this claim clearly without merit, not requiring substantial discussion. R. 2:11-3(e)(2). We find no merit to the contention that either the State or the judge, or both were at fault or that the prosecutor's decision to proceed to a third trial was misguided or unfair. *See State v. Abbati*, 99 N.J. 418, 435-36 (1985); *State v. Dunns*, 266 N.J. Super. 349, 353-61 (App. Div.), certif. denied, 134 N.J. 567 (1993). There is no suggestion in the record that the State provoked the first mistrial. *See Oregon v. Kennedy*, 456 U.S. 667, 671-72, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982). Both defense counsel moved for a mistrial in the first trial and the judge acceded to their request. Of course, the "hung" jury in the second trial does not require application of the double jeopardy or fundamental

fairness bar, although a second hung jury might support a fairness bar. *See Abbati*, 99 N.J. at 435.

*State of New Jersey v. McMillan*, A-1528-01T1 (N.J. Super. Ct. App. Div. June 28, 2004).

The Double Jeopardy Clause forbids that "any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause "protects a criminal defendant from repeated prosecutions for the same offense," *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982), and affords the defendant a "valued right to have his trial completed by a particular tribunal," *Wade v. Hunter*, 336 U.S. 684, 689 (1994). "The Double Jeopardy Clause, however, does not offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding." *Kennedy*, 456 U.S. at 672. The Supreme Court held in *Kennedy* that "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Id.* at 676.

In this case, the Appellate Division found that neither the State nor the judge was at fault with regard to the first mistrial. The state court also found that the prosecutor's decision to proceed to a third trial was not misguided or unfair, and that there was no suggestion in the record that the State provoked the first mistrial. Petitioner is not entitled to habeas relief on his double jeopardy claim because he has not shown that the New Jersey courts' adjudication of the claim was based on an unreasonable determination of the facts in light of the evidence presented, or was contrary to, or an unreasonable application of, Supreme Court precedent.

## 2. Confrontation Clause (Ground Three)

In Ground Three of his petition, Petitioner alleges that "the state court's ruling that Petitioner was not deprived of his sixth amendment constitutional right to confrontation when the Court allowed Akcasoy's testimony to be read during Petitioner's second trial was contrary to clearly established federal law." The Appellate Division found this ground so lacked merit that it did not require discussion in a written opinion. *State of New Jersey v. McMillan*, A-1528-01T1 (N.J. Super. Ct. App. Div. Oct. 18, 2004).

The Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." This guarantee applies to both federal and state prosecutions. *See Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court held that the Sixth Amendment's Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant has had a prior opportunity for cross-examination." *Id.* at 53–54; *see also Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

The testimony of Akcasoy that was read into the record during Petitioner's third trial consisted of his testimony from Petitioner's second trial, where he was subject to cross-examination by Petitioner's attorney. Petitioner's Confrontation Clause argument is therefore without merit and the Court finds that the state court's adjudication of the claim was not based on an unreasonable determination of the facts in light of the evidence presented, nor was it contrary to, or an unreasonable application of, Supreme Court precedent. *See Rolan v. Coleman*, 680 F.3d 311, 327-28 (3d Cir. 2012).

## 3. State Evidentiary Issues (Grounds Four and Eleven)

In his fourth ground for relief, Petitioner argues that "the state court's ruling that Petitioner was not deprived of his due process right to a fair trial by the introduction of Petitioner's mug shot was contrary to clearly established federal law."

The Appellate Division rejected this argument. I reproduce its discussion here:

Defendant next contends that the introduction into evidence of the photographs taken shortly after his arrest requires a reversal. We disagree. The trial judge did not abuse his discretion by admitting into evidence defendant's arrest photograph or "mug shot" taken in connection with the case for which defendant was on trial. The arrest photo was relevant to the issue of identification of defendant as the perpetrator of the armed robbery.

Shortly after defendant was arrested, he was photographed by the Essex county Sheriff's Department. The arrest photos consisted of a front and a profile view of defendant with information across the bottom indicating that the photograph was taken by the Sheriff's Office, the date and "some identifying information on the bottom of the photograph." The background was a plain painted cinder block wall. Defense counsel argued that only the frontal view of defendant's arrest photo should be shown to the jury. Over the objection of defense counsel, Judge Malone admitted both the profile and frontal views of defendant's arrest photo with the references to the Sheriff's Office and other identifying information eliminated from the photograph.

"[W]here identification is an issue and the State's use of a mug shot is reasonably related to that issue, [we have] held that the mug shot is admissible for that purpose, in as neutral a form as possible and despite the inferences it nevertheless raises." *State v. Taplin*, 230 N.J. Super. 95, 99 (1988), citing *State v. O'Leary*, 25 N.J. 104, 115 (1957); *see also State v. Cribb*, 281 N.J. Super. 156, 161 (App. Div. 1995). Defendant's arrest photo was clearly relevant because it had "a tendency in reason to prove" that defendant was the perpetrator of the armed robbery, which was a critical fact in issue in this case. N.J.R.E. 401. Identification of defendant and Pagan as the perpetrators of the armed robbery was a significant issue in this case because the victim Turan Akcasoy was unable to identify either of them as the perpetrators. It was relevant to compare the arrest photo of defendant to the individuals seen on the gas station videotape of the robbery suspects.

At the time of the third trial, the robbery had occurred three years earlier; defendant's appearance had changed. Sergeant Dileo testified that the "[n]ight of the incident [defendant) had a mustache and full goatee, his hair was longer, and he was heavier" and looked like he had lost some weight since the incident. It was relevant to show defendant's appearance at the time of the crime. Defense trial counsel realized the relevance of the arrest photo since he agreed that the frontal

view of defendant was admissible and merely argued against the admission of the profile view of defendant.

Also, both defendant and Pagan claimed that they had been misidentified and claimed they were not at the scene of the armed robbery. The arrest photo was very relevant evidence; all relevant evidence is admissible unless its probative value is outweighed by its prejudice to defendant. N.J.R.E. 402. Defendant bears the burden of proof that the probative value of this evidence is outweighed by its prejudice. *Rosenblitz v. Zimmerman*, 166 N.J. 391, 410 (2001).

The probative value of the arrest photo was not outweighed by any prejudice to defendant. N.J.R.E. 402. The judge ordered that the identifying information on the bottom of the photograph be eliminated. The jury knew from Sergeant DiLeo's testimony that defendant's appearance had changed, and that he had been arrested for the crimes for which he was on trial, not "other crimes." We see nothing in this record to suggest that these photos unfairly prejudiced defendant and prevented a fair trial.

*State of New Jersey v. McMillan*, A-1528-01T1 (N.J. Super. Ct. App. Div. June 28, 2004).

In Ground Eleven, Petitioner argues that "the state court's ruling that Petitioner was not deprived of his right to due process by being denied an expert on custodial interrogations was contrary to clearly established federal law." The state courts found this issue to be without sufficient merit to warrant a written discussion.

"Federal habeas corpus relief does not lie for errors of state law," *Estelle*, 502 U.S. at 67, such as evidentiary rulings, unless the rulings rendered the trial so fundamentally unfair that a denial of constitutional rights results. An erroneous evidentiary ruling violates due process only if it is so egregious that it results in a denial of fundamental fairness. However, courts "have defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana v. Egelhoff*, 518 U.S. 37, 43, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996).

Thus, unless Petitioner can demonstrate that the introduction of this evidence denied him his right to a fair trial or due process, habeas relief is not warranted.

Petitioner has failed to meet that burden in this case. As discussed at length by the Appellate Division, Petitioner's appearance had changed substantially since the time of the robbery and Petitioner was claiming that he had been misidentified. Under those circumstances, the photo showing Petitioner's appearance at the time of the robbery was highly relevant. Petitioner's objection that the Court should have admitted the testimony of an expert on custodial interrogation is not well taken; it does not appear that Petitioner ever sought to introduce such expert testimony. (Indeed, he faults his attorney for this supposed lapse. *See* section II.B.7.b, *infra*.) Nor has he shown how any such testimony would have aided his case, as the issues regarding his statement to the police were relatively straightforward. The Court finds that the state court's adjudications of these claims were not based on an unreasonable determination of the facts in light of the evidence presented, nor were they contrary to, or an unreasonable application of, Supreme Court precedent.

### 4. Jury Charges (Grounds Five, Six, Nine and Ten)

In Ground Five of his petition, Petitioner states that "the state court's ruling that Petitioner was not deprived of his due process right to a fair trial by the trial court's charge to the jury on identification which was improper and incomplete was contrary to clearly established federal law." In Ground Six, he argues that "the state court's ruling that Petitioner was not deprived of his due process right to a fair trial by the cumulative effect of the improper instructions regarding inconsistent statements and alibi was contrary to clearly established federal law." In Ground Nine, Petitioner alleges that "the state court's ruling that Petitioner was not deprived of his due process right to a fair trial by the failure of the trial court to give a cross-racial identification charge

was contrary to clearly established federal law." Finally, in Ground Ten, he states that "the state court's ruling that Petitioner was not deprived of his of [sic] Sixth Amendment constitutional right by the incorrect jury instructions was contrary to clearly established federal law."

The Appellate Division rejected these claims. Its reasoning was as follows:

> Defendant next claims that the charge to the jury on identification was improper and incomplete, depriving him of a fair trial. We disagree.
>
> When a defendant claims error in a jury charge, the charge must be read as a whole. *State v. Wilbely*, 63 N.J. 420, 422. All that is required is that the charge is accurate viewed in its entirety. *State v. Thompson*, 59 N.J. 396, 411 (1971); *Kaplan v. Haines*, 96 N.J. Super. 242, 251 (App. Div.), aff'd, 51 N.J. 404 (1968) , overruled on other grounds *Larqey v. Rothman*, 110 N.J. 204, 206 (1988). *See also State v. Walker*, 322 N.J. Super. 535, 546-53 (App. Div.), certif. denied 162 N.J. 487 (1999).
>
> In this instance, the plain error standard also applies because the point was not raised below. Defendant must show the alleged error was clearly capable of producing an unjust result. R. 2:10-2. Still, "[c]lear and correct jury charges are essential to a fair trial and failure to provide them may constitute plain error." Pressler, Current N.J. Court Rules, Comment 2 .1 to R. 2:10-2 (citing, inter alia, *State v. Josephs*, 174 N.J. 44, 91 (2002); *State v. Nelson*, 173 N.J. 417, 446-447 (2002); *State v. Marshall*, 173 N.J. 343, 359 (2002)).
>
> Defendant argues the following part of the jury charge at the third trial requires reversal:
>
>> The defendant, as part of his [general] denial of guilt, contends that the State has not presented sufficient reliable evidence to establish 'beyond a reasonable doubt that he is the person who committed the alleged offense.
>>
>> The burden of proving the identity of the person who committed the crime is upon the State. For you to find this defendant guilty, the State must prove beyond a reasonable doubt that this defendant is the person who committed the crime.
>>
>> The defendant has neither the burden nor the duty to show that the crime, if committed, was committed by someone else, or to prove the identity of that other person. You must determine, therefore, not only whether the State has proved each and every element of the offense charged beyond a reasonable doubt, but also whether the State has proved beyond a reasonable doubt that this defendant is

14

the person who committed it.

> The state has presented the testimony of Officer DiLeo. You will recall that this witness identified the defendant as the person who committed the offenses. According to this witness, his identification of the defendant in Court is based upon the observations and perceptions that he made of the perpetrator at the time the offense was being committed.

McMillan's criticism is that "the instruction was factually incorrect and misleading because Officer DiLeo was not present at the site of the robbery, nor did he follow the perpetrators' getaway vehicle from or near the site of the robbery." In addition, "[DiLeo] did not intercept and chase a vehicle believed to possibly be that getaway vehicle until it had reached a point separated by significant time and space from the Amoco station. Therefore, DiLeo could not identify the defendant as the person who committed the robbery. He could only identify the person he arrested in front of the bar.'" McMillan continues:

> Because DiLeo did not observe the entire incident the jury should have been charged that DiLeo's observations and perceptions of McMillan were relevant only to his identification of the person who committed the offenses of resisting arrest and aggravated assault upon his person. The charge as given never made the limits of Officer DiLeo's identification clear to the jury.

Defendant's point is well taken but does not persuade us to reverse. The judge misspoke, quite obviously. We cannot conceive that the jury could have been misled by this error, to defendant's prejudice. The judge's obvious reference was intended to be to DiLeo's identification of the man he pursued and apprehended and who was charged with the offenses committed at the scene of the apprehension, i.e., assault on the officer and resisting arrest.

The State never contended that Officer Dileo "witnessed" the gas station robbery. The State properly stresses that defendant did not object to the jury charge, and that we must consider the prejudicial effect of an omitted instruction "'in light of the totality' of the circumstances - including all instructions to the jury, (and] the arguments of counsel ...." (citing *State v. Marshall*, 123 N.J. 1, 145 (1991) (citing *Kentucky v. Whorton*, 441 U.S. 786, 789, 99 S. Ct. 2088, 60 L. Ed. 2d 640 (1979)); *State v. Tierney*, 356 N.J. Super. 468, 481 (App. Div.), certif. denied 176 N.J. 72 (2003)). The State says defendant's claim is frivolous, because "[t]he facts of this case were not so complex or confusing as to require an intricate discussion in the charge of the facts or defendant's theory (citing *State v. Biegenwald*, 106 N.J. 13, 44-45 (1987)). The State contends "[McMillan's] theory was very simple - he did not rob the Amoco gas station and he had just left the Violin Club bar and only happened to be in the area of the police's foot chase of the suspects."

We see no error here in the instruction given, the standard identification charge. Absent any specific request to charge, R. 1:8-7, or any objection to the charge, R. 1:7-2, we find no harm to the defendant here. The judge may have misspoken but not in a manner very likely to prejudice defendant in the context of this case. The case was fairly tried and fully argued on the identification issue without any challenge to the jury charge at trial. *See State v. Walker*, 322 N.J. Super. 535 (App. Div.), certif. denied, 162 N.J. 487 (1999). There was no harmful error.

*State of New Jersey v. McMillan*, A-1528-01T1 (N.J. Super. Ct. App. Div. June 28, 2004).

The PCR court rejected Petitioner's contentions as to the cross-racial identification charge, reasoning succinctly as follows:

There was a challenge to the charge in the PCR, specifically the CROMITY (PHONETIC) charge,[1] the cross-racial identification. It's not applicable in this case since the witness identified the vehicle, not the perpetrator.

(Resp'ts' Br., Ex. 22T, PCR Hr'g Tr. 21:22-22:2.) The state courts found the remaining issues to be without sufficient merit to warrant a written discussion.

A habeas petitioner who challenges state jury instructions must "point to a federal requirement that [they] ... must include particular provisions" or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997). This is because district courts do not "sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law ...." *Id. See also Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) ("[I]t must be established not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some [constitutional right]") (citations and internal quotation marks omitted). Thus "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle*, 502 U.S. at 71–72. "Insofar as respondents simply challenge the correctness of the self-defense instructions under Ohio law, they

---

[1] The reference is probably to *State v. Cromedy,* 727 A.2d 457 (N.J. 1999), a seminal New Jersey case on cross-racial identification.

16

allege no deprivation of federal rights and may not obtain habeas relief". *Engle v. Isaac*, 456 U.S.

107, 119, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Petitioner has not alleged any violations of

federal law which would properly form the basis for habeas relief based on these instructions.

Moreover, the state court's decision upholding the instructions was not "contrary to, or ... an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States" and Petitioner is not entitled to habeas relief on this ground. *See Smith v.*

*Spisak*, —— U.S. ——, 130 S.Ct. 676, 684, 175 L.Ed.2d 595 (2010) (no right to habeas relief if

Supreme Court has not previously held jury instruction unconstitutional for same reason); *Dansby*

*v. Trombley*, 369 F.3d 657, 659 (6th Cir. 2010) ("Dansby's [§ 2254] claim fails because the

Supreme Court has never held that due process requires the giving of jury instructions on

lesser-included offenses in noncapital cases").

## 5. Testimony Read-Back (Ground Seven)

In his seventh ground for relief, Petitioner argues that "the state court's ruling that

Petitioner was not deprived of his due process right to a fair trial by the trial court's handling of the

jury's request for a read-back was contrary to clearly established federal law." Petitioner raised

this issue on direct appeal and the Appellate Division rejected it.

It does not appear that the jury ever asked the state court to read back Officer DiLeo's

testimony. (Resp'ts' Br., Ex. 20T, Trial Tr. 3:24-4:9.) Instead, the jury's note stated: "Could we

have the police report filed by Officer DiLeo on 2/5/98?" (*Id.*) The trial judge replied: "It was

my recollection it was marked for identification, but because the report itself is not in evidence,

you can't have the report. However, any testimony about - - from Officer DiLeo, any testimony

he may have given about his report is, of course, evidence. You can consider his testimony." (*Id.*)

Even a denied request for a read-back of testimony would ordinarily fail to rise to the level of

Constitutional error; and there was no such requests here. Petitioner has not alleged any violations which would properly form the basis for habeas relief. Moreover, the state court's decision upholding the trail court's handling to the jury's question was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Petitioner is not entitled to habeas relief on this ground.

## 6. Prosecutorial Misconduct (Ground Eight)

In his eighth ground for relief, Petitioner alleges that "the state court's ruling that Petitioner was not deprived of his due process rights to a fair trial by the prosecutor's improper comments in his opening arguments before the jury was contrary to clearly established federal law." Petitioner raised this issue on direct appeal and the Appellate Division found it to be without merit.

When reviewing a prosecutor's comments in an opening or closing statement, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). In evaluating the likely effect of improper comments, a court may consider whether the improper comments were invited by or responsive to prior comments by opposing counsel. *Darden*, 477 U.S. at 181–82. Thus, "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001).

Based on a careful review of the entire trial record, this Court finds that the prosecutor's statements during opening arguments did not have the capacity to so infect the trial with unfairness as to make the resulting conviction a denial of due process. In his opening argument, the

18

prosecutor stated that "[w]e are here because the defendant is an opportunist. He takes opportunities in hand. However, the opportunity [sic] which he takes are not lawful. He's a robber because he commits robberies." (Resp'ts' Br., Ex. 15T, Trial Tr. 20:17-25.) After an objection by defense counsel, the judge instructed the prosecutor to confine his comments to the instant case. (*Id.*)

Here, it is clear that the prosecutor's comments were not improper. Moreover, even if the comments were to be found improper, any impropriety was alleviated by the trial court's instruction to the prosecutor to confine his comments to the instant case and the prosecutor's acquiescence. *See Moore*, 255 F.3d at 107. Petitioner has not shown that his rights were violated and the Court finds no error of constitutional dimension with respect to Petitioner's claim of prosecutorial misconduct. Accordingly, this ground for habeas relief is denied.

### 7. Ineffective Assistance of Counsel (Grounds Thirteen through Nineteen)

In Grounds Thirteen through Nineteen of his petition, Petitioner alleges that his counsel was ineffective for the following reasons:

> Ground Thirteen: The state court's ruling that Petitioner was not deprived of his Sixth Amendment right to effective assistance of counsel by the deficient representation during plea negotiations was contrary to clearly established federal law.

> Ground Fourteen: The state court's ruling that Petitioner was not deprived of his Sixth Amendment constitutional right to effective assistance of counsel by the failure to properly investigate and provide an expert to support Petitioner's contention that his statements to Office [sic] Davis were involuntary as he did not properly waive his Miranda rights was contrary to clearly established federal law.

> Ground Fifteen: The state court's ruling that Petitioner was not deprived of his Sixth Amendment constitutional right to effective assistance of counsel by the failure to request that the court give a cross racial identification charge to the jury was contrary to clearly established federal law.

> Ground Sixteen: The state court's ruling that Petitioner was not deprived of his Sixth Amendment constitutional right to effective assistance of counsel by the

failure to adequately investigate and properly object to victim's being declared unavailable and having his prior testimony read to the jury was contrary to clearly established federal law.

Ground Seventeen: The state court's ruling that Petitioner was not deprived of his Sixth Amendment constitutional right to effective assistance of counsel by the failure of not moving for a new trial at some point during or even after the conclusion of the third trial on the basis of prosecutorial misconduct or the court's finding the key witness unavailable was contrary to clearly established federal law.

Ground Eighteen: The state court's ruling that Petitioner was not deprived of his Sixth Amendment constitutional right to effective assistance of appellate counsel by the failure to adequately examine the record raise meritorious claims was contrary to clearly established federal law.

Ground Nineteen: The state court's ruling that Petitioner was not deprived of his Sixth Amendment constitutional right to effective assistance of counsel by the failure to properly advise Petitioner of the risks of going before a jury vice accepting a plea bargain involving a bench trial was contrary to clearly established federal law.

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *See Strickland*, 466 U.S. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. "[C]ounsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011)(citing *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052). "To overcome that presumption, a defendant must show that counsel failed to

act 'reasonabl[y] considering all the circumstances.'" *Id.* (citing *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052).

Further, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. *Id.*

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding'...Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011)(citing *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052). As the Supreme Court explained,

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Strickland*, 466 U.S. at 695-96.

The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." *Strickland*,

466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

## a. Plea Negotiations (Grounds Thirteen and Nineteen)

Petitioner raised his arguments regarding ineffective assistance during plea negotiations in his PCR petition. The Superior Court rejected this claim:

> [t]he defendant asserts that counsel was deficient in the plea negotiation aspects of this case, as to the plea agreement and the sentence possibilities. There is, aside from that bold assertion, nothing to support that conclusion, and [t]he Court notes that there is a court rule which requires - - and there's nothing to indicate that it wasn't followed here - - that a trial memorandum be prepared before a case goes on the trial list, and that trial memorandum must contain two things - - a plea offer, if one was made, and the possible exposure that the defendant faced on all of the - - all of the charges. There's no indication that that wasn't done, and it wasn't made part of the record in this case, and wasn't presented to defendant.

(Resp'ts' Br., Ex. 22T, PCR Hr'g Tr. 20:18-21:8.)   The Appellate Division affirmed the ruling by the PCR court:

> Defendant also repeats his argument that trial counsel failed to advise him properly during plea bargaining. However, the record is devoid of any legally competent evidence supporting that claim. A claim of ineffective assistance of counsel requires more than "bald assertions." *State v. Cummings*, 321 N.J. Super. 154, 170 (App. Div.), certif. denied, 162 N.J. 199 (1999).

*State of New Jersey v. McMillan*, A-4719-06T4 (N.J. Super. Ct. App. Div. Jan. 5. 2010).

As stated by the PCR court, the record is absolutely devoid of any support for Petitioner's contentions. The state courts' decision on this issue was not contrary to, and did not involve an unreasonable application of, clearly established federal law; nor was it based on an unreasonable determination of the facts presented in the state court proceedings. Therefore, Petitioner is not entitled to relief on this claim.

## b.  Failure to Provide Interrogation Expert (Ground Fourteen)

Petitioner raised this argument in his PCR petition, which was denied.

There is a contention that trial counsel was deficient in not calling an expert witness about his statement to the police. Again, there's no showing as to what an expert might have added to this proceeding, how expert testimony would have been beneficial to the defense had such an expert been retained.

(Resp'ts' Br., Ex. 22T, PCR Hr'g Tr. 21:17-22.)

As discussed above in relation to Ground Eleven, and as the PCR court properly noted, Petitioner has failed even to suggest, let alone establish, what benefit expert testimony regarding custodial interrogations would have brought to his case. Petitioner has failed to meet the prejudice prong of *Strickland* and therefore is not entitled to relief on this ground.

### c. Cross-Racial Identification Charge (Ground Fifteen)

As stated above in relation to Ground Nine, a cross-racial identification charge was not applicable in this case, since the witness was identifying the vehicle, not the perpetrator. The state court's decision determining that counsel was not ineffective for failing to request such a charge was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Petitioner is not entitled to habeas relief on this ground.

### d. Unavailability of Witness (Ground Sixteen)

This contention, raised in Petitioner's PCR petition, was denied by the Superior Court and then the Appellate Division.

As he did before Judge Malone, defendant contends that his trial counsel should have done more to locate Akcasoy. However, defendant offered no evidence as to where Akcasoy was at the time of the third trial, or how trial counsel could have located him. And, most importantly, he did not explain how producing Akcasoy in person would have changed the outcome of the trial. Even at the original trial, Akcasoy was unable to identify defendant. Rather, defendant was photographed by a security camera, and the best identification evidence was the jury's view of the video tape as well as defendant's contemporaneous mug shot which was properly placed before the jury.

*State of New Jersey v. McMillan*, A-4719-06T4 (N.J. Super. Ct. App. Div. Jan. 5. 2010).

As properly held by the state courts, Petitioner has failed to meet either prong of the *Strickland* analysis. He has not shown what counsel could have done to locate the witness, nor has he shown any prejudice that resulted from counsel's failure to produce the witness. The state court's decision determining that counsel was not ineffective for failing to produce Akcasoy at the third trial was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Petitioner is not entitled to habeas relief on this ground.

### e. New Trial (Ground Seventeen)

Petitioner raised the issue of counsel's failure to make a timely new trial motion in his PCR petition, where it was denied. The PCR court noted that counsel did in fact make a motion for a new trial, and that the motion was untimely. The trial court nevertheless addressed the motion on the merits. It held that "the two grounds being raised - - prosecutorial misconduct and the allowing the unavailable witness's testimony to be read - - were both addressed during the course of the trial and were not the basis for a motion for a new trial." (Resp'ts' Br., Ex. 22T, PCR Hr'g Tr. 23:3-7.)

Based on the foregoing, it is clear that Petitioner did not meet either prong of the *Strickland* standard. There was no prejudice as a result of the motion's alleged untimeliness, because the state court addressed the motion on the merits. In addition, for the reasons expressed herein, Petitioner's arguments based on prosecutorial misconduct and the read-in of an unavailable witness's testimony lacked merit. The state court's decision determining that counsel was not ineffective was not contrary to, or an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States. Petitioner is not entitled to habeas relief on this ground.

### f. Ineffective Assistance of Appellate Counsel (Ground Eighteen)

Petitioner raised the ground of ineffective assistance of appellate counsel in his PCR petition and it was denied by the Superior Court:

> An argument that appellate counsel did not - - was not familiar with the transcript was not in any way supported by anything submitted to [t]he Court, nor is there any indication of how such a contention affected the outcome of the appeal. Many of the specific charges, or the specific grounds for ineffective appellate counsel - - that appellate counsel did not adequately argue prosecutorial misconduct, improper questioning of the defendant by the police, the Cromity charge, the implications of the Blakely decision on the sentence - - all were addressed by the Appellate Division in their supplemental opinion and found to be without merit. The defendant had his opportunity to have the Appellate Court consider those issues.

(Resp'ts' Br., Ex. 22T, PCR Hr'g Tr. 24:1-15.)

The ineffective assistance of counsel standard of *Strickland*, 466 U.S. at 686, applies to a claim that appellate counsel was ineffective. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000); *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

Petitioner generally states that appellate counsel was subpar, but offers little in the way of specifics. There was not prejudice because the Petitioner's issues on appeal lacked merit, as I have found, and I see no basis for thinking that different counsel could have cast them in a more favorable light. The New Jersey courts' adjudication of Petitioner's ineffective assistance of appellate counsel claim was not contrary to, or an unreasonable application of, *Strickland* and other Supreme Court holdings. The petition will be denied on this ground.

### 8. Plea Bargain of Co-Defendant (Ground Twenty)

In Ground Twenty of his petition, Petitioner argues:

> The state court's ruling that Petitioner was not deprived of his constitutional right to due process by the failure of the court to unseal the plea bargain records of the

co-defendant in support of Defendant's claim of disparate sentences and that the state failed to disclose the said plea offer of the co-defendant was contrary to clearly established federal law.

Petitioner raised this issue on PCR, where it was denied by the Superior Court in a ruling that was affirmed by the Appellate Division:

> As to the sentence received by the co-defendant, again, while it may have been--and my recollection it was--substantially different from the sentence received by this defendant, it's really not a relevant point as to what sentence the co-defendant may--was received under circumstances where the co-defendant pled and got the benefit of a plea bargain.

(Resp'ts' Br., Ex. 22T, PCR Hr'g Tr. 21:11-16.)[2]

That a co-defendant received a lesser sentence is no basis for habeas relief, particularly where the co-defendant pled guilty while defendant went to trial. Reading the Petition liberally, however, I may consider whether (as is sometimes the case) the co-defendant's plea suggests the presence of undisclosed exculpatory evidence.

The Supreme Court has held that the prosecution has a due process obligation to disclose to the defendant its knowledge of material evidence favorable to the defendant, either because the evidence is exculpatory or because it can serve to impeach a key prosecution witness. *See Kyles v. Whitley*, 514 U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1967). "There are three components of a true *Brady* violation: The

---

[2] Petitioner's request for a stay and abeyance, denied by Judge Linares, is related to this ground. In his request for reconsideration, Petitioner refers to "newly discovered evidence," which consists of a certification from his co-defendant regarding the plea agreement that the co-defendant received. (Pet'r's Br. Supp. Stay, Ex. B.) Nothing in the certification indicates that the State possessed undisclosed exculpatory information. (*Id.*) Additionally, there does not appear to be any reason why Petitioner, exercising ordinary diligence, could not have previously obtained this certification and presented it to the state court. Habeas relief will also be denied on the merits for Petitioner's proposed additional ground. His motions for reconsideration of Judge Linares's order are also denied. (ECF Nos. 21-30)

evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *see also Kyles*, 514 U.S. at 434 ("The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence"); *California v. Trombetta*, 467 U.S. 479, 488–89, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) (state's failure to retain breath samples was not unconstitutional where the chances are extremely low that preserved samples would have been exculpatory); *United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) ("It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed").

The standard applied by the state courts was not contrary to, or an unreasonable application of, relevant Supreme Court holdings. Petitioner has not shown that the details of his co-defendant's plea agreement would have been favorable for his position. He has not shown that it could have been used to impeach a prosecution witness. (Ordinarily a plea agreement may be used to impeach the testimony of the person who pled guilty by suggesting that he has a motive to shade his testimony in the prosecution's favor. Here the co-defendant was not a witness at Petitioner's trial.) Moreover, Petitioner has failed to show, or even to plausibly suggest, that any

prejudice resulted.   At the most, Petitioner has demonstrated that his co-defendant struck a plea deal, pled guilty, and received a lighter sentence.   No Constitutional principle is implicated. Habeas relief is denied on this ground.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.   A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."   *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.   No certificate of appealability shall issue.

## IV.   CONCLUSION

For the above reasons, the § 2254 habeas petition is denied, and a certificate of appealability will not issue.   An appropriate Order follows.

DATED: June 14, 2013

KEVIN MCNULTY
United States District Judge